**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

KEVIN GAREY, on behalf of himself and all
others similarly situated,

                  Plaintiffs,

                  v.                            **CLASS ACTION COMPLAINT**

LANDS' END, INC.,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## INTRODUCTION

1. This putative class action seeks to put an end to systemic civil rights violations committed by Defendant, LANDS' END, INC. (hereafter "Defendant"), against sight-impaired, disabled individuals, as is under Title III of the Americans with Disability Act ("ADA"), within the State of New York and across the United States.

2. The Plaintiff, KEVIN GAREY, on behalf of himself and all other similarly situated individuals, asserts the following claims against the Defendants, LANDS' END, INC.

3. The Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to access and read website content using his computer. The Plaintiff uses the terms "blind" or "visually-impaired" to refer to all individuals with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20/200. Some blind individuals who meet this definition have limited vision. Others have no vision.

4. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million individuals in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

5.  The Plaintiff commences this civil rights action against the Defendant for the Defendant's failure to design, construct, maintain, and operate its website to be fully accessible to and independently usable by the Plaintiff and other similarly situated blind or visually-impaired persons. The Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical location, is a violation of the Plaintiff's rights under the Americans with Disabilities Act (ADA).

6.  Because the Defendant's website is not equally accessible to blind and visually-impaired individuals, it violates the ADA. The Plaintiff seeks a permanent injunction to cause a change in the Defendant's corporate policies, practices, and procedures so that the Defendant's website will thus become and remain accessible to blind and visually-impaired persons.

## JURISDICTION AND VENUE

7.  This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as the Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, et seq., and 28 U.S.C. § 1332.

8.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the Plaintiff's New York State Human Rights Law, N.Y. Exec. Law article 15, (NYSHRL), New York State Civil Rights Law article 4 (NYSCRL), and New York City Human Rights Law, N.Y.C. Admin. Code § 8- 101, et seq., (NYCHRL) claims.

9.  Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because the Plaintiff resides in this district, the Defendant conducted and continue to conduct a substantial and significant amount of business in this district, the Defendant is subject to personal jurisdiction in this district, and a substantial portion of the conduct complained of herein occurred in this district.

10. The Defendant is subject to personal jurisdiction in this district. The Defendant

committed and continue to commit the acts or omissions alleged herein in this district that caused injury, and violated rights the ADA prescribes to the Plaintiff and to other blind and visually-impaired persons. A substantial part of the acts and omissions giving rise to the Plaintiff's claims occurred in this district: on separate occasions, the Plaintiff has been denied the full use and enjoyment of the facilities, goods, products and services of the Defendant's website in this district. These access barriers that the Plaintiff encountered have caused a denial of the Plaintiff's full and equal access in the past, and now deter the Plaintiff on a regular basis from visiting the Defendant's premises. This includes the Plaintiff attempting to obtain information about the Defendant's location(s), address, and hours in this district as well as those services, accommodations, privileges, and other important information.

11. These access barriers have deterred Plaintiff from revisiting Defendant's website and/or visiting its physical location(s), despite an intention to do so.

12. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

13. The Plaintiff, KEVIN GAREY, at all relevant times, was a resident of Bronx County. The Plaintiff is a legally blind, visually-impaired, handicapped person and a member of a protected class of individuals under the ADA, 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR § 36.101, *et seq.*, the NYSHRL, and NYCHRL.

14. Defendant is and was at all relevant times a Wisconsin business corporation doing business in New York.

15. Defendant operates LANDS' END, INC., along with a store and a website, www.landsend.com, offering features which should allow all consumers to access the goods and services which Defendant offers in connection with its store.

16. Defendant operates a store in New York, which is located at 2655 Richmond Avenue, New York, NY 10022.

17. Defendant is a men's and women's apparel and home decor retailer. Defendant's website is offered to the public and provides consumers and the general public with access to a range of apparel, footwear, home décor, and accessories. Defendant offers apparel such as coats, swimwear, shirts, pants, suits, dresses, and sweaters. Additionally, Defendant offer's home décor items such as, bed sheets, pillows, pillow cases, comforters, duvet covers, and throws. Defendant's website also offers services such as store hours and location, the ability to browse and purchased Store products for delivery, and a blog detailing news and events.

18. These stores constitute places of public accommodation. The Defendant's stores are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Defendant's website is a service, privilege, or advantage that is heavily integrated with the Defendant's physical locations and operates as a gateway thereto.

## CLASS ACTION ALLEGATIONS

19. The Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind persons in the City of New York who have attempted to access the Defendant's website and as a result have been denied access to the equal enjoyment of goods and services offered in the Defendant's physical locations, during the relevant statutory period.

20. Common questions of law and fact exist among the class, including: whether the Defendant's website is a "public accommodation" under the ADA; whether the Defendant's website is a "place or provider of public accommodation" under the NYSHRL or NYCHRL; whether the Defendant's website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to individuals with visual disabilities, violating the ADA; and whether the Defendant's website denies the full

and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to individuals with visual disabilities, violating the NYSHRL or NYCHRL.

21. There are common questions of law and fact common to the class, including without limitation, the following:

    a.  Whether www.landsend.com is a "public accommodation" under the ADA;

    b.  Whether www.landsend.com is a "place or provider of public accommodation" under the laws of the New York;

    c.  Whether Defendant through its website www.landsend.com denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

    d.  Whether Defendant through its website www.landsend.com denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the laws of New York.

22. The Plaintiff's claims are typical of the class. The class, similarly to the Plaintiff, are severely visually impaired or otherwise blind, claim that the Defendants violated the ADA, NYSHRL, and NYCHRL by failing to update or remove access barriers on the Defendant's website so it can be independently accessible to the class.

23. The Plaintiff will fairly and adequately represent and protect the interests of the class because the Plaintiff has retained and is represented by counsel. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because the Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to the Plaintiff and the class as a whole.

24. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact

and legal questions common to the class predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

25. Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by individuals with visual disabilities throughout the United States.

26. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## NATURE OF ACTION

27. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

28. The blind and visually-impaired persons can access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, and services contained thereon. An accessibility notice is put on a website by the creator thereof to showcase that the website is working diligently to create a better experience for low-vision or blind users.

29. Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user

having to purchase the program separately, like NVDA. Moreover, also available is the Job Access With Speech ("JAWS"), which is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

30. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

31. The International website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines (WCAG 2.0). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired individuals. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.0 as the standard guideline for accessibility.

32. There are well-established guidelines for making websites accessible to blind persons. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their websites accessible. The Web Accessibility Initiative (WAI), a project of the World Wide Web Consortium which is the leading standards organization of the Web, has developed guidelines for website accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: adding invisible alt-text to graphics; ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible,

and adding headings so that blind people can easily navigate the site. Without these very basic components a website will be inaccessible to a blind person using a screen reader.

33. Noncompliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following: a text equivalent for every non-text element is not provided; title frames with text are not provided for identification and navigation; equivalent text is not provided when using scripts; forms with the same information and functionality as for sighted persons are not provided; information about the meaning and structure of content is not conveyed by more than the visual presentation of content; text cannot be resized without assistive technology up to 200% without losing content or functionality; if the content enforces a time limit, the user is not able to extend, adjust or disable it; web pages do not have titles that describe the topic or purpose; the purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context; one or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible; the default human language of each web page cannot be programmatically determined; when a component receives focus, it may initiate a change in context; changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component; labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot; in content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique; inaccessible Portable Document Format (PDF) files; the name and role of all user interface elements cannot be programmatically determined; and items that can be set by the user cannot be programmatically set and/or notification of changes to these items is

not available to user agents, including assistive technology.

## STATEMENT OF FACTS

34. The Defendant's website is offered to the public. The website offers features that should allow all individuals to access the goods and services that the Defendant offers through their physical location(s). Defendant is a men's and women's apparel and home decor retailer. Defendant's website is offered to the public and provides consumers and the general public with access to a range of apparel, footwear, home décor, and accessories. Defendant offers apparel such as coats, swimwear, shirts, pants, suits, dresses, and sweaters. Additionally, Defendant offer's home décor items such as, bed sheets, pillows, pillow cases, comforters, duvet covers, and throws. Defendant's website also offers services such as store hours and location, the ability to browse and purchased Store products for delivery, and a blog detailing news and events.

35. Plaintiff was in the market for apparel for himself and a loved one. Upon researching and browsing several options Plaintiff came across Defendant's website. Plaintiff was unable to properly access and browse Defendant's website which prevented Plaintiff from obtaining necessary information about products and services Defendant offers through both online and physical channels.

36. It is, upon information and belief, the Defendant's policy and practice to deny the Plaintiff, along with other blind or visually-impaired users, access to the Defendant's website, and to therefore specifically deny the goods and services that are offered and are heavily integrated with the Defendant's locations. Due to the Defendant's failure and refusal to remove access barriers to its website, the Plaintiff and other visually-impaired persons have been and are still being denied equal access to Defendant's store locations, information pertaining to good availability, information about store amenities, including hours of operation, and related goods and services.

37. The Plaintiff is a visually-impaired and legally blind person, who cannot use a

computer without the assistance of screen-reading software. The Plaintiff is, however, a proficient NVDA screen-reader user and uses it to access the Internet. The Plaintiff has visited the website on separate occasions using the NVDA screen-reader.

38. During the Plaintiff's visits to the website, the last occurring in January 2019, the Plaintiff encountered multiple access barriers that denied the Plaintiff full and equal access to the goods and services offered to the public and made available to the public; and that denied the Plaintiff the full enjoyment of the goods, and services of the website, as well as to the goods, and services of the Defendant's locations in New York by being unable to learn more information about store locations, information pertaining to availability of goods, information about store amenities, including hours of operation, and related goods and services, among other things readily available to sighted individuals.

39. While attempting to navigate the website, the Plaintiff encountered multiple accessibility barriers for blind or visually-impaired individuals that include, but are not limited to: (1) Lack of alternative text ("alt-text"), or a text equivalent. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, the Defendant's visually-impaired customers are unable to determine what is on the website, browse, look for store locations, information about store amenities, including hours of operation, and related goods and services. (2) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen-reader users. (3) Redundant links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and

screen-reader users. (4) Linked images missing alt-text, which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

40. Due to the inaccessibility of the Defendant's website, blind and visually-impaired customers such as the Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services the Defendant offers to the public on its website. The access barriers the Plaintiff encountered have caused a denial of the Plaintiff's full and equal access in the past, and now deter the Plaintiff on a regular basis from accessing the website.

41. These access barriers on the Defendant's website have deterred the Plaintiff from visiting the Defendant's physical store location(s) and enjoying them equal to sighted individuals because: the Plaintiff was unable to find the location and hours of operation of the Defendant's locations on its website, preventing the Plaintiff from visiting the locations to view and purchase goods and/or services. The Plaintiff intends to visit the Defendant's website and physical locations in the near future if the Plaintiff could access the Defendant's website.

42. If the website was equally accessible to all, the Plaintiff could independently navigate the website and complete a desired transaction, as sighted individuals do.

43. The Plaintiff, through the Plaintiff's attempts to use the website, has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired persons.

44. Because basic compliance with WCAG 2.0 would provide the Plaintiff and other visually-impaired persons with equal access to the website, the Plaintiff alleges that the Defendant engaged in acts of intentional discrimination, including, but not limited

to, the following policies or practices: constructing and maintaining a website that is inaccessible to visually-impaired persons, including the Plaintiff; failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired persons, including the Plaintiff; and failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired persons , such as the Plaintiff, as a member of a protected class.

45. The Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination against others, as alleged herein.

46. The ADA expressly contemplates the injunctive relief that the Plaintiff seeks in this action. In relevant part, the ADA requires:

In the case of violations of … this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities …. Where appropriate, injunctive relief shall also include requiring the … modification of a policy ….42 U.S.C. § 12188(a)(2).

47. Because the Defendant's website has never been equally accessible, and because the Defendant lacks a corporate policy that is reasonably calculated to cause the Defendant's website to become and remain accessible, the Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring the Defendant to retain a qualified consultant acceptable to the Plaintiff to assist the Defendant to comply with WCAG 2.0 guidelines for the Defendant's website. The website must be accessible for individuals with disabilities who use desktop computers, laptops, tablets, and smartphones. The Plaintiff seeks that this permanent injunction require the Defendant to cooperate with the agreed-upon consultant to: train the Defendant's employees and agents who develop the website on accessibility compliance under the WCAG 2.0 guidelines; regularly check the accessibility of the website under the WCAG 2.0 guidelines; regularly test user

-12-

accessibility by blind or vision-impaired persons to ensure that the Defendant's website complies under the WCAG 2.0 guidelines; and develop an accessibility policy that is clearly disclosed on the Defendant's website, with contact information for users to report accessibility-related problems and require that any third-party vendors who participate on the Defendant's website to be fully accessible to the disabled by conforming with WCAG 2.0.

48. If the Defendant's website were accessible, the Plaintiff and similarly situated blind and visually-impaired persons could independently access information about store locations, information about store amenities, including hours of operation, and related goods and services.

49. Although the Defendant may currently have centralized policies regarding maintaining and operating the Defendant's website, the Defendant lacks a plan and policy reasonably calculated to make the Defendant's website fully and equally accessible to, and independently usable by, blind and other visually-impaired persons.

50. The Defendant has, upon information and belief, invested substantial sums in developing and maintaining the Defendant's website and the Defendant has generated significant revenue from the Defendant's website. These amounts are far greater than the associated cost of making the Defendant's website equally accessible to visually impaired customers.

51. Without injunctive relief, the Plaintiff and other visually-impaired persons will continue to be unable to independently use the Defendant's website, violating their rights.

## FIRST CAUSE OF ACTION
### VIOLATIONS OF THE ADA, 42 U.S.C. § 1281 *et seq.*

52. Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

53. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

54. Defendant's stores are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's Website is a service, privilege, or advantage of Defendant's store(s). The Website is a service that is integrated with these location(s).

55. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

56. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

57. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

58. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are

provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

59. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL

60. Plaintiff, on behalf of himself and the New York State Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

62. Defendant's physical location(s) are located in State of New York and throughout the United States and constitute sales establishments and public accommodations within the definition of N.Y. Exec. Law § 292(9). Defendant's Website is a service, privilege or advantage of Defendant. Defendant's Website is a service that is by and integrated with these physical locations.

63. Defendant is subject to New York Human Rights Law because it owns and operates its physical locations and Website. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

64. Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to its Website, causing its Website and the services integrated with Defendant's physical locations to be completely inaccessible to the blind. This inaccessibility denies

blind patrons full and equal access to the facilities, services that Defendant makes available to the non-disabled public.

65. Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden".

66. Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

67. Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

68. Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the NYSHRL, N.Y. Exec. Law § 296(2) in that Defendant has:

      a.    constructed and maintained a website that is inaccessible to blind

class members with knowledge of the discrimination; and/or

b.       constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.       failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

69. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

70. Defendant discriminates and will continue in the future to discriminate against Plaintiff and New York State Sub-Class Members on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website and its physical locations under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the Sub-Class Members will continue to suffer irreparable harm.

71. Defendant's actions were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

72. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for each and every offense.

73. Plaintiff is also entitled to reasonable attorneys' fees and costs.

74. Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE NEW YORK STATE CIVIL RIGHTS LAW

75. Plaintiff, on behalf of himself and the New York State Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76. Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil

Rights Law § 41.

77. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

78. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

79. Defendant's New York State physical location(s) are sales establishments and public accommodations within the definition of N.Y. Civil Rights Law § 40-c(2). Defendant's Website is a service, privilege or advantage of Defendant and its Website is a service that is by and integrated with these establishments.

80. Defendant is subject to New York Civil Rights Law because it owns and operates its physical location(s) and Website. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

81. Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to its Website, causing its Website and the goods and services integrated with Defendant's physical location(s) to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

82. N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

83. Under NY Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside ..."

84. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

85. Defendant discriminates, and will continue in the future to discriminate against Plaintiff and New York State Sub-Class Members on the basis of disability are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

86. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines under N.Y. Civil Law § 40 *et seq.* for each and every offense.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE NYCHRL

87. Plaintiff, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

88. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to

such person, any of the accommodations, advantages, facilities or privileges thereof."

89. Defendant's location(s) are sales establishments and public accommodations within the definition of N.Y.C. Admin. Code § 8-102(9), and its Website is a service that is integrated with its establishment(s).

90. Defendant is subject to NYCHRL because it owns and operates its physical locations in the City of New York and its Website, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

91. Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Website, causing its Website and the services integrated with its physical locations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

92. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

93. Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

    a.    constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

    b.    constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

      c.      failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

94. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

95. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website and its establishments under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

96. Defendant's actions were and are in violation of the NYCHRL and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

97. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

98. Plaintiff is also entitled to reasonable attorneys' fees and costs.

99. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
## DECLARATORY RELIEF

100.   Plaintiff, on behalf of himself and the Class and New York State and City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

101.   An actual controversy has arisen and now exists between the parties in that Plaintiff

contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the goods and services and facilities of its Website and by extension its physical locations, which Defendant owns, operations and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

102.   A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

a.   A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

b.   A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.   A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

d.   An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as

Class Counsel;

e.    Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of their civil rights under New York State Human Rights Law and City Law;

f.    Pre- and post-judgment interest;

g.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.    Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated:    Queens, New York
           February 19, 2019

**SHALOM LAW, PLLC**

By: <u>/s/*Jonathan Shalom*</u>
Jonathan Shalom, Esq.
Jshalom@jonathanshalomlaw.com
124-04 Metropolitan Avenue
Kew Gardens, NY 11415
Telephone: (718) 971-9474
Facsimile: (718) 865-0943

**ATTORNEYS FOR PLAINTIFF**