**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KEVIN GAREY, on behalf of himself and all
others similarly situated,

                    Plaintiff,                 Case No.: 1:19-cv-01663-RA-GG

          v.

LANDS' END, INC.,

                    Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**<u>PLAINTIFF'S CLASS ACTION COMPLAINT</u>**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel.: 212-589-4200
Fax.: 212-589-4201
*Attorneys for Defendant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................iii

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

    I.      The Company And Its Website.................................................................. 3

    II.     Garey's Allegations ................................................................................. 3

MEMORANDUM OF LAW ................................................................................. 4

    I.      Garey's Complaint Should Be Dismissed Pursuant To Rule 12(b)(6). .................. 4

          A.     The Complaint Should Be Dismissed Because Garey Has Failed To Include Plausible Factual Allegations Of Inaccessibility To Put Lands' End On Sufficient Notice Of His Claims.........................................5

          B.     The Complaint Should Be Dismissed Because Garey Has Failed To State A Claim Upon Which Relief Can Be Granted Under Title III Of The ADA. ..................................................................................6

               1.     Garey Has Not Alleged That He Sought Access To A Place Of Public Accommodation Owned Or Operated By Lands' End. ..................................................................................6

                    i.     The Plain Language Of Title III And The DOJ's Implementing Regulations Clearly Limit The Term "Place Of Public Accommodation" To Physical Facilities. ..........................................................................7

                    ii.    A Majority Of Courts Have Held That Websites Are Not Places Of Public Accommodation. ...............................8

                    iii.   Garey Has Failed To Save His Complaint By Pleading A Sufficient Nexus Between Lands' End's Website And Any Physical Lands' End Location. ............10

               2.     Garey Has Not Alleged That Lands' End Engaged In Any Conduct Made Unlawful By Title III.............................................12

                    i.     Because The DOJ's Implementing Regulations Include No Provisions Governing Website Accessibility, Holding Lands' End Liable For Maintaining An Allegedly Inaccessible Website Would Violate Basic Principles Of Due Process...............12

ii.    Non-Binding Guidance Mentioned By The DOJ Does Not Create An Actionable Cause Of Action Under Title III. ...................................................................14

3.    Garey Has Failed To State a Claim Upon Which Relief Can Be Granted Under The NYSHRL, The NYCRL, And The NYCHRL. ...................................................................16

II.    Garey's Complaint Should Be Dismissed Because Garey Does Not Have Standing To Bring A Claim Against Lands' End. ................................................. 17

A.    Garey Does Not Have Standing To Bring A Claim Against Lands' End. ...................................................................17

B.    Garey's Claim Is Not Yet Ripe. ...................................................................18

III.    Garey's Complaint Should Be Dismissed Pursuant To The Primary Jurisdiction Doctrine. ................................................................................ 19

CONCLUSION ........................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**                                          **Page(s)**

*Access Now, Inc. v. Sw. Airlines, Co.*,
227 F. Supp. 2d 1312 (S.D. Fla. 2002), *appeal dismissed,* 385 F.3d 1324 (11th
Cir. 2004) ................................................................................................6, 7, 11, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................4, 5

*Bebry v. ALJAC LLC*,
954 F. Supp. 2d 173 (E.D.N.Y. 2013) ....................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................2, 4, 11

*Broderick v. Research Found. of State Univ. of N.Y.*,
No. 10-CV-3612 JS ETB, 2010 WL 3173832 (E.D.N.Y. Aug. 11, 2010) ..............17

*Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*,
980 F. Supp. 2d 588 (S.D.N.Y. 2013) ...................................................................17

*Camarillo v. Carrols Corp.*,
518 F.3d 153 (2d Cir. 2008) ....................................................................................6

*Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*,
37 F.3d 12 (1st Cir. 1994) .......................................................................................9

*Chambers v. Beatty*,
281 F. Supp. 711 (S.D.N.Y. 1968) ..........................................................................19

*Cullen v. Netflix, Inc.*,
880 F. Supp. 2d 1017 (N.D. Cal. 2012) ..................................................................10

*Doe v. Mut. of Omaha Ins. Co.*,
179 F.3d 557 (7th Cir. 1999) ..................................................................................9

*Earll v. eBay, Inc.*,
No. 5:11-cv-00262-JF (HRL), 2011 WL 3955485 (N.D. Cal. Sept. 7, 2011) .........10

*Ford v. Schering-Plough Corp.*,
145 F.3d 601 (3d Cir. 1998) ...................................................................................9

*Garey v. Gloria Jewel Inc.*,
Case No. 1:19-cv-00383-AJN, Compl. (Doc. 1) (filed Jan. 14, 2019) ...................2

*Garey v. GoodRx, Inc.*,
Case No. 1:19-cv-02071-PGG-SN, Compl. (Doc. 1) (filed Mar. 6, 2019)...............2

*Garey v. Kendra Scott, LLC*,
  Case No. 1:18-cv-10505-PAE-SDA, Compl. (Doc. 1) (filed Nov. 13, 2018) ...........................1

*Garey v. Nehaus, Inc.*,
  Case No. 1:18-cv-10656-KPF, Compl. (Doc. 1) (filed Nov. 15, 2018)....................................2

*Garey v. New York Adorned, Inc.*,
  Case No. 1:18-cv-10509-AT, Compl. (Doc. 1) (filed Nov. 13, 2018)....................................1

*Garey v. Oak NYC Apparel Co., L.P.*,
  Case No. 1:18-cv-10506-AJN, Compl. (Doc. 1) (filed Nov. 13, 2018)...................................1

*Giambattista v. Am. Airlines, Inc.*,
  584 F. App'x 23 (2d Cir. 2014) ......................................................................16

*Gomez v. Bang & Olufsen Am., Inc.*,
  No. 1:16-cv-23801, 2017 WL 1957182 (S.D. Fla. Feb. 2, 2017)....................................10, 11

*J.H. by & through Holman v. Just for Kids, Inc.*,
  248 F. Supp. 3d 1210 (D. Utah 2017).....................................................................9

*Jancik v. Redbox Automated Retail, LLC*,
  No. SACV-13-1387-DOC, 2014 WL 1920751 (C.D. Cal. May 14, 2014) ............................10

*Kennedy v. Paniccia-Indialantic, LLC*,
  No. 616CV2208 ORL31DCI, 2017 WL 5178182 (M.D. Fla. Nov. 8, 2017)...........................5

*Kidwell v. Fla. Comm'n on Human Relations*,
  No. 2:16-cv-403-FTM-99-CM, 2017 WL 176897 (M.D. Fla. Jan. 17, 2017).......................10

*Kreisler v. Second Ave. Diner Corp.*,
  No. 10 Civ. 7592(RJS), 2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012)................................17

*Kurtz v. Verizon New York, Inc.*,
  758 F.3d 506 (2d Cir. 2014).............................................................................19

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. New York State Dep't of Envtl.
  Conservation*,
  79 F.3d 1298 (2d Cir. 1996)............................................................................19

*Nat'l Ass'n of the Deaf v. Netflix, Inc.*,
  869 F. Supp. 2d 196 (D. Mass. 2012) ................................................................10

*Nat'l Fed'n of the Blind v. Scribd Inc.*,
  97 F. Supp. 3d 565 (D. Vt. 2015).......................................................................10

*National Fed'n of the Blind v. Target Corp.*,
  452 F. Supp. 2d 946 (N.D. Cal. 2006) ................................................................11

*Noah v. AOL Time Warner, Inc.*,
    261 F. Supp. 2d 532 (E.D. Va. 2003), *aff'd sub nom.*, No. 03-cv-1770, 2004
    WL 602711 (4th Cir. Mar. 24, 2004).........................................................................8

*Nutritional Health Alliance v. Shalala*,
    144 F.3d 220 (2d Cir.1998).................................................................................19

*Ouellette v. Viacom*,
    No. 10-cv-133-M-DWM-JCL, 2011 WL 1882780 (D. Mont. Mar. 31, 2011).................10, 11

*Pallozzi v. Allstate Life Ins. Co.*,
    198 F.3d 28 (2d Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392
    (2d Cir. 2000)........................................................................................................8

*Panzica v. Mas-Maz, Inc.*,
    No. CV 05-2595 ARL, 2007 WL 1732123 (E.D.N.Y. June 11, 2007) ...................16

*Parker v. Metro. Life Ins. Co.*,
    121 F.3d 1006 (6th Cir. 1997) .............................................................................9

*Price v. Everglades Coll., Inc.*,
    No. 618-cv-492ORL31GJK, 2018 WL 3428156 (M.D. Fla. July 16, 2018).........11

*Reiter v. Cooper*,
    507 U.S. 258, 113 S. Ct. 1213, 122 L. Ed. 2d 604 (1993)....................................20

*Reno v. ACLU*,
    521 U.S. 844 (1997)...............................................................................................8

*Rodal v. Anesthesia Grp. of Onondaga, P.C.*,
    369 F.3d 113 (2d Cir. 2004)................................................................................16

*Rodriguez v. Investco, LLC*,
    305 F. Supp. 2d 1278 (M.D. Fla. 2004).................................................................2

*Romanello v. Shiseido Cosmetics Am.*,
    No. 00 Civ. 7201, 2002 WL 31190169 (S.D.N.Y. Sept. 30, 2002)........................16

*Rome v. MTA/New York City Transit*,
    No. 97-CV-2945 (JG), 1997 WL 1048908 (E.D.N.Y. Nov. 18, 1997) ..................7, 9

*Rymes Heating Oils, Inc. v. Springfield Term. R.*,
    358 F.3d 82 (1st Cir. 2004)..................................................................................20

*Samper v. Univ. of Rochester*,
    144 A.D.2d 940, 535 N.Y.S.2d 281 (4th Dep't 1988)...........................................16

*Schroedel v. New York Univ. Med. Ctr.*,
    885 F. Supp. 594 (S.D.N.Y. 1995).......................................................................18

*Stevens v. Premier Cruises, Inc.*,
   215 F.3d 1237 (11th Cir. 2000) ........................................................9

*Stoutenborough v. Nat'l Football League, Inc.*,
   59 F.3d 580 (6th Cir. 1995) ...........................................................9

*Texas v. United States*,
   523 U.S. 296 (1998) .....................................................................19

*United States v. Fell*,
   360 F.3d 135 (2d Cir. 2004).........................................................19

*United States v. Western Pac. R. Co.*,
   352 U.S. 59 (1956).......................................................................20

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F.3d 1104 (9th Cir. 2000) .......................................................9

*Witt v. Vill. of Mamaroneck*,
   992 F. Supp. 2d 350 (S.D.N.Y. 2014)..........................................19

**Statutes**

29 U.S.C. § 794(d) ..............................................................................14

42 U.S.C. § 12181(7) ...................................................................7, 8, 9

42 U.S.C. § 12182 ................................................................................4

42 U.S.C. § 12182(b)(2)(A)(iii) ........................................................13

Americans with Disabilities Act Title III, 42 U.S.C. § 12181 *et seq.*..............................1

N.Y. Exec Law § 296(2)(a)................................................................16

New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ....................................1

New York State Civil Rights Law, N.Y. Civ. R. § 40 *et seq.*....................................1, 16

New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* .........................................1, 16

Rehabilitation Act Section 508 ..........................................................14

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ......................................1, 17, 19

Federal Rule of Civil Procedure 12(b)(6) ..............................................1, 2

## Other Authorities

28 C.F.R. § 36, Appendix A ......................................................................................14

28 C.F.R. § 36, Appendix C ......................................................................................13

28 C.F.R. § 36.104 .....................................................................................................8

28 C.F.R. § 36.303 ...................................................................................................13

28 C.F.R. § 36.303(c)(1) ...........................................................................................13

75 Fed. Reg. 43460 ...................................................................................................12

75 Fed. Reg. 43464 ..............................................................................................12, 13

2017 Inactive Regulations, RegInfo.Gov,
   https://www.reginfo.gov/public/jsp/eAgenda/InactiveRINs_2017_Agenda_Up
   date.pdf. ...............................................................................................................13

*About W3C*, w3.org, https://www.w3.org/Consortium/ (last visited April 25,
   2019) .....................................................................................................................15

*ADA Title III Technical Assistance Manual Covering Public Accommodations
   and Commercial Facilities*, at § III-1.2000, ADA.GOV,
   https://www.ada.gov/taman3.html (last visited April 25, 2019).............................7

https://www.landsend.com/ (last visited April 8, 2019) ...............................................3

MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/place
   (last visited April 25, 2019) ...................................................................................7

*Statement of Regulatory Priorities* (Fall 2015),
   https://www.reginfo.gov/public/jsp/eAgenda/StaticContent/201510/
   Statement_1100.html .............................................................................................12

Stephen E. Boyd, Assistant Attorney General, *Correspondence to Congressman
   Ted Budd* (September 25, 2018), https://www.adatitleiii.com/wp-
   content/uploads/sites/121/2018/10/DOJ-letter-to-congress.pdf (last accessed
   May 1, 2019) ..........................................................................................................15

U.S. DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK OFFICIAL COURT
   ELECTRONIC DOCUMENT FILING SYSTEM, https://ecf.nysd.uscourts.gov/cgi-
   bin/iquery.pl ............................................................................................................1

*Web Content Accessibility Guidelines 1.0*, w3.org, https://www.w3.org/TR/WAI-
   WEBCONTENT/ (last visited April 25, 2019)........................................................15

*Web Content Accessibility Guidelines 2.0*, W3.ORG,
   https://www.w3.org/TR/WCAG20/ (last visited February 20, 2019)........................15

The Defendant, LANDS' END, INC. ("Lands' End" or the "Company"), files its Memorandum of Law in Support of its Motion to Dismiss the Class Action Complaint ("Complaint") filed by the Plaintiff, KEVIN GAREY ("Garey"), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  For the reasons set forth below, Defendant respectfully moves this Court for an order dismissing Garey's Complaint.

## PRELIMINARY STATEMENT

In his Complaint, Garey, who claims he is legally blind, vaguely alleges that he was "unable to properly access and browse" Lands' End's website.  Compl. ¶ 35.  Based on this allegation, Garey now brings disability discrimination claims on behalf of himself and a purported nationwide class of allegedly similarly situated individuals under Title III of the Americans with Disabilities Act ("Title III"), 42 U.S.C. § 12181 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; the New York State Civil Rights Law ("NYCRL"), N.Y. Civ. R. § 40 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

Since November 13, 2018 (less than 6 months ago), Garey has filed *sixty-four (64)* actions in this District alone, most (if not all) of which make identical allegations regarding the alleged accessibility of websites. *See* U.S. DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK OFFICIAL COURT ELECTRONIC DOCUMENT FILING SYSTEM, https://ecf.nysd.uscourts.gov/cgi-bin/iquery.pl (type "Garey" in the Last/Business Name field with "Exact matches only" checked, and "Kevin" in the First Name field).  These identical allegations include the vague claims of accessibility barriers found in Paragraph 39 of the Complaint in the instant case.  *See e.g., Garey v. Kendra Scott, LLC*, Case No. 1:18-cv-10505-PAE-SDA, Compl. (Doc. 1) at ¶ 38 (filed Nov. 13, 2018); *Garey v. Oak NYC Apparel Co., L.P.*, Case No. 1:18-cv-10506-AJN, Compl. (Doc. 1) at ¶ 38 (filed Nov. 13, 2018); *Garey v. New York Adorned, Inc.*, Case No. 1:18-cv-10509-AT,

Compl. (Doc. 1) at ¶ 38 (filed Nov. 13, 2018); *Garey v. Nehaus, Inc.*, Case No. 1:18-cv-10656-KPF, Compl. (Doc. 1) at ¶ 38 (filed Nov. 15, 2018); *Garey v. Gloria Jewel Inc.*, Case No. 1:19-cv-00383-AJN, Compl. (Doc. 1) at ¶ 39 (filed Jan. 14, 2019); *Garey v. GoodRx, Inc.*, Case No. 1:19-cv-02071-PGG-SN, Compl. (Doc. 1) at ¶ 25 (filed Mar. 6, 2019). Garey's routine use of "cookie-cutter" complaints is, unfortunately, unsurprising, as companies like Lands' End are currently facing an explosion of lawsuits – all filed on behalf of a limited number of visually impaired plaintiffs represented by an even smaller group of plaintiffs' attorneys – attacking the accessibility of their websites under Title III. This trend is merely the next wave of ADA "drive-by" litigation, a phenomena primarily "driven by economics – that is, the economics of attorney's fees."[1] *Rodriguez v. Investco, LLC*, 305 F. Supp. 2d 1278, 1282 (M.D. Fla. 2004); *see also Twombly*, 550 U.S. 544, 557 (2007) (explaining that Rule 8's plausibility standard is necessary "lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value" (internal quotation marks and citation omitted)).

Regardless of its motives, Garey's Complaint must be dismissed for a variety of distinct legal reasons.  First, Garey's vague, cookie-cutter allegations do not plausibly allege inaccessibility, fail to put Lands' End on notice of his specific claims against the Company, and therefore must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Second, since Garey has failed to plead the essential elements of his Title III claim (including, importantly, that he was *denied access* to a *physical* place of public accommodation), this claim must also be dismissed for failure to state an actionable claim for relief under the ADA.  Third, because Garey has failed to sufficiently allege that he suffered a real injury-in-fact or is likely to suffer any additional injury in the future, he has failed to sufficiently demonstrate: (a) that he has standing

---

[1]  As money damages are not available to plaintiffs under Title III, these claims seek only injunctive relief and, notably, attorneys' fees.

to bring a claim under Title III against Lands' End; or (b) that his Title III claims are ripe for litigation.   Finally, the Complaint must be dismissed pursuant to the primary jurisdiction doctrine, as the agency charged with promulgating regulations implementing Title III has not yet issued any final regulation governing website accessibility.

## FACTUAL BACKGROUND

### I.   THE COMPANY AND ITS WEBSITE

Lands' End owns and operates retail locations throughout the United States and also hosts a website, www.landsend.com (the "Website"), that provides information to the public about its business. Lands' End also operates customer service telephone numbers – listed prominently on the Website – which provide customers and potential customers additional access to information available on the Website. *See* Website, https://www.landsend.com/, (last visited April 8, 2019) (phone number displayed in upper-right corner, lower-left corner, and bottom of the page).

### II.   GAREY'S ALLEGATIONS

Garey claims that he is "visually-impaired and legally blind." Compl. at ¶ 3. Garey further claims he "requires screen-reading software to access and read website content using his computer." *Id.* Importantly, Garey does not allege that he was *unable* to access any Lands' End location because of the Company's Website. *Id.* at ¶ 41 (emphasis added).

Garey claims that he "encountered multiple accessibility barriers" that "include, but are not limited to: (1) Lack of alternative text ('alt-text'), or a text equivalent. . . . (2) Empty links that contain no text . . . . (3) Redundant links where adjacent links to the same URL address . . . . (4) Linked images missing alt-text." Compl. ¶ 39.

Garey claims that he is a legally blind individual residing in Bronx County. Compl. ¶¶ 3, 13.   Garey alleges that he "was in the market for apparel for himself and a loved one" and that he "came across" the Website. *Id.* at ¶ 35.   While he fails to give a timeframe for this

presumably first encounter with the Website, he later states that his most recent encounter was in January 2019.  *Id.* at ¶¶ 35, 38.

As a result of these alleged barriers, Garey claims that Lands' End has violated Title III, under which "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation," and related New York state and municipal law.  42 U.S.C. § 12182.

## MEMORANDUM OF LAW

### I.   GAREY'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Nor does a complaint suffice if its tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to

relief." *Id.*

**A.    The Complaint Should Be Dismissed Because Garey Has Failed To Include Plausible Factual Allegations Of Inaccessibility To Put Lands' End On Sufficient Notice Of His Claims.**

As an initial matter, Garey's Complaint is impermissibly vague and conclusory. It does not include sufficient "factual enhancement" in support of Garey's conclusory allegations to plausibly state a claim of website inaccessibility against Lands' End, and as a result Lands' End is not sufficiently on notice of Garey's claims against the Company. While Garey claims that the he "encountered multiple accessibility barriers" while accessing the Website, he vaguely alleges that the alleged barriers "include, but are not limited to," lack of alternative text, empty links, redundant links, and linked images missing alternative text, but fails to identify the portions of the Website where he encountered these alleged barriers.  Compl. ¶ 39.  "Anyone reading the Complaint would also be left in the dark as to the barriers [he] encountered, as [Garey] does not include that information.  Instead, [Garey] provides a laundry list of violations that allegedly exist . . . leaving it a mystery as to how [he] became aware of them." *Kennedy v. Paniccia-Indialantic, LLC*, No. 616CV2208 ORL31DCI, 2017 WL 5178182, at *4 (M.D. Fla. Nov. 8, 2017) (dismissing Title III complaint for failure to state claim). Instead, the "Complaint…does not contain sufficient facts to 'raise a right to relief above a speculative level' and thereby satisfy Rule 8." *Id. "*It is essentially nothing more than a placeholder. It does not provide fair notice to [] Defendant[s] as to Plaintiff's claim, and its consideration wastes the time of the parties, and this Court." *Id.* Based on the language of Garey's Complaint, Lands' End has not been placed on notice as to what elements of its Website Garey allegedly found inaccessible and is therefore unable to conduct any sort of investigation into his claims or to specifically respond to his allegations. As a result, Garey's allegations do not plausibly state a claim of wrongdoing by Lands' End, and Garey's Complaint must be dismissed.

**B.      The Complaint Should Be Dismissed Because Garey Has Failed To State A Claim Upon Which Relief Can Be Granted Under Title III Of The ADA.**

Not only are the Complaint's allegations impermissibly vague, they also fail to state an actionable claim for relief under Title III. In order to state a claim under Title III, a plaintiff must allege: (1) that he is disabled within the meaning of the ADA; (2) that the defendant owns, leases, or operates a place of public accommodation to which the plaintiff has sought access; and (3) that the defendant has failed to provide the plaintiff equal access to the goods or services provided at such place of public accommodation. *See Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). While Garey alleges that he has a disability under the ADA, he has failed to plead facts sufficient to establish the second and third elements of his Title III claim. As an initial matter, Garey has not alleged that he attempted to access a place of public accommodation owned, leased, or operated by Lands' End.  Even if Garey had claimed that he had sought access to a place of public accommodation, which he has not, he has not sufficiently pled that Lands' End failed to provide him with equal access to such a place.  As a result, Garey's Complaint must be dismissed for failure to state a claim.

**1.      Garey Has Not Alleged That He Sought Access To A Place Of Public Accommodation Owned Or Operated By Lands' End.**

The allegations of Garey's Complaint focus solely on the accessibility of Lands' End' Website. Because the ADA governs "solely access to physical, concrete places of public accommodation," Garey has not adequately alleged that he sought access to a *place* of public accommodation owned or operated by Lands' End. *Access Now, Inc. v. Sw. Airlines, Co.*, 227 F. Supp. 2d 1312, 1318 (S.D. Fla. 2002), *appeal dismissed,* 385 F.3d 1324 (11th Cir. 2004).

i.     **The Plain Language Of Title III And The DOJ's Implementing Regulations Clearly Limit The Term "Place Of Public Accommodation" To Physical Facilities.**

By its clear terms, Title III applies only to those who operate a *place* of public accommodation. While the statute does not define the term "place," this word's meaning is unambiguous. *See* MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/place (last visited April 25, 2019) (defining "place" as, among other things, "a physical environment;" "a particular region, center of population, or location to visit;" or "a building, part of a building, or area occupied"). The statute does, however, offer a clear and detailed definition of the term "public accommodation," enumerating twelve specific categories of public accommodation; notably, the word "place" is used repeatedly, and each of the twelve categories enumerated in the statute refers to physical, brick-and-mortar establishments open to the public at a specific location. 42 U.S.C. § 12181(7); *see Access Now*, 227 F. Supp. 2d at 1319 ("[T]he general term[]…'sales establishment' [is] limited to [its] correspondingly specifically enumerated terms, all of which are physical, concrete structures…."). Moreover, the ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities not only makes clear that a place of public accommodation is limited to the twelve categories listed in the statute, but also equates the word "place" with physical "facilities." *See ADA Title III Technical Assistance Manual Covering Public Accommodations and Commercial Facilities*, at § III-1.2000, ADA.GOV, https://www.ada.gov/taman3.html (last visited April 25, 2019) (stating a place of accommodation is a "facility" that falls within at least one of 12 listed categories, all of which are physical establishments). Title III's unambiguous statutory language clearly demonstrates Congress' intent to limit the statute's reach to physical establishments. Had Congress intended Title III to apply to all businesses offering goods and services to the public, it would not have limited the defined list of public accommodations to only those offered at a "place." *See generally Rome v. MTA/New York*

7

*City Transit*, No. 97-CV-2945 (JG), 1997 WL 1048908, at *1 (E.D.N.Y. Nov. 18, 1997) ("[W]hile such reasoning [including non-physical spaces as places of public accommodation] may have a certain logic to it, it is contrary to the statute. . . . the plain language of the statute indicates that "a public accommodation is a physical place. Every item listed in 12181(7) and subsection (F) is a physical place open to public access.").

The regulations issued by the Department of Justice (the "DOJ") to implement Title III reinforce that places of public accommodation must be physical in nature. The regulations define the term "place of public accommodation" as "a facility," which is further defined as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 36.104. This language makes clear that places of public accommodation are only those spaces accessible at a specific physical location. Websites, by contrast, are not accessible at a certain physical place or facility, and thus are not places of public accommodation under Title III. *See Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 544 (E.D. Va. 2003) ("[A]lthough a chat room or other online forum might be referred to metaphorically as a 'location' or 'place,' it lacks the physical presence necessary to constitute a place of public accommodation under Title II" of the ADA.), *aff'd sub nom.*, No. 03-cv-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004); *see also Reno v. ACLU*, 521 U.S. 844, 851 (1997) (explaining Internet is "unique medium – known to its users as 'cyberspace' – located in no particular geographical location").

### ii.   A Majority Of Courts Have Held That Websites Are Not Places Of Public Accommodation.

The Second Circuit has not directly addressed the question of whether the term "place of public accommodation," as defined by Section 12181(7), includes non-physical spaces like websites. *See generally Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32 (2d Cir. 1999), *opinion*

*amended on denial of reh'g*, 204 F.3d 392 (2d Cir. 2000) (holding *only* that Title III requires places of public accommodation to provide more than mere physical access and not addressing distinct question of whether non-physical spaces can qualify as places of public accommodation).  But, the majority of circuit courts addressing the issue — the Third, Sixth, Ninth, and Eleventh Circuits — have all looked to the clear statutory language discussed above and limited Title III's reach to *physical* places of public accommodation. *See Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1241 (11th Cir. 2000) ("Because Congress has provided such a comprehensive definition of 'public accommodation,' we think that the intent of Congress is clear enough."); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (limiting term places of public accommodation to "actual, physical places where goods or services are open to the public"); *Ford v. Schering-Plough Corp.,* 145 F.3d 601, 612-14 (3d Cir. 1998) ("[W]e do not find the term 'public accommodation' or the terms in 42 U.S.C. § 12181(7) to refer to non-physical access or even to be ambiguous as to their meaning."); *Parker v. Metro. Life Ins. Co.,* 121 F.3d 1006, 1010-13 (6th Cir. 1997) ("As is evident by § 12187(7), a public accommodation is a physical place…"); *Stoutenborough v. Nat'l Football League, Inc.*, 59 F.3d 580, 583 (6th Cir. 1995) (explaining places of public accommodation are limited to physical "facilities"); *see also J.H. by & through Holman v. Just for Kids, Inc.*, 248 F. Supp. 3d. 1210, 1217 (D. Utah 2017) ("[T]he law's remedial purpose cannot overcome its plain meaning as written."); *Rome v. MTA/N.Y. City Transit*, No. 97-cv-2945 (JG), 1997 WL 1048908, at *6 (E.D.N.Y. Nov. 18, 1997) ("[W]hile such reasoning [including non-physical spaces as places of public accommodation] may have a certain logic to it, it is contrary to the statute."); *but see Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999).

Following this majority view, a number of district courts have held that websites and mobile applications, by themselves, are not places of public accommodation and, consequently, that Title III claims based upon alleged inaccessibility of such websites must be dismissed. *See Kidwell v. Fla. Comm'n on Human Relations*, No. 2:16-cv-403-FTM-99-CM, 2017 WL 176897, at *5 (M.D. Fla. Jan. 17, 2017) ("Plaintiff may not claim a violation of Title III based on an internet website's accessibility. Neither [of defendants'] online website is a physical or public accommodation under the ADA."); *see also Cullen v. Netflix, Inc.,* 880 F. Supp. 2d 1017, 1023-24 (N.D. Cal. 2012); *Earll v. eBay, Inc.,* No. 5:11-cv-00262-JF (HRL), 2011 WL 3955485, at *2 (N.D. Cal. Sept. 7, 2011); *Ouellette v. Viacom,* No. 10-cv-133-M-DWM-JCL, 2011 WL 1882780, at *4-5 (D. Mont. Mar. 31, 2011); *but see Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 576 (D. Vt. 2015); *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012). Because Garey's Complaint concerns only his access to Lands' End's Website and Mobile Application, which are not places of public accommodation as clearly defined by the statute and correctly interpreted by a majority of courts, the Complaint fails to state a claim under Title III.

### iii. Garey Has Failed To Save His Complaint By Pleading A Sufficient Nexus Between Lands' End's Website And Any Physical Lands' End Location.

A number of courts have held that while websites themselves are not places of public accommodation, a website that impairs one's access *to a related physical establishment* may run afoul of Title III. *See, e.g.*, *Gomez v. Bang & Olufsen Am., Inc.*, No. 1:16-cv-23801, 2017 WL 1957182, at *3 (S.D. Fla. Feb. 2, 2017) ("[T]he majority of courts agree that websites are not covered by the ADA unless some function on the website hinders the full use and enjoyment of a physical space."); *compare Jancik v. Redbox Automated Retail, LLC,* No. SACV-13-1387-DOC (RNBx), 2014 WL 1920751, at *8–9 (C.D. Cal. May 14, 2014) (holding website was not place of public accommodation because there was not sufficient nexus between website and defendant's

physical kiosks); *Ouellette*, 2011 WL 1882780, at *4–5 (holding website by itself was not physical place and was not sufficiently connected to physical structure); *Access Now,* 227 F. Supp. 2d at 1319–21 (rejecting application of Title III to website because it was not physical location nor means of accessing concrete space); *with National Fed'n of the Blind v. Target Corp.,* 452 F. Supp. 2d 946, 954-955 (N.D. Cal. 2006) (holding plaintiff had alleged sufficient facts to state claim under Title III when plaintiff had "alleged the inaccessibility of Target.com denie[d] the blind the ability to enjoy the services *of Target stores*" (emphasis added)). In order to state a claim under Title III based upon a website's alleged inaccessibility, therefore, a plaintiff must allege "some nexus between the website and the physical place of accommodation." *Price v. Everglades Coll., Inc.*, No. 618-cv-492ORL31GJK, 2018 WL 3428156, at *2 (M.D. Fla. July 16, 2018) (internal quotations and citation omitted).  Thus, not every "impediment to access to a website violates the ADA just because the website has a connection to a physical public accommodation." *Id.* Instead, "[a]ll the ADA requires is that, if a [public accommodation] chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-mortar [public accommodation]." *Id.* (quoting *Gomez*, 2017 WL 1957182, at *3). "While a nexus is obviously a requirement, alleging the mere existence of some connection or link between the website and the physical location is not sufficient." *Id.*

Garey claims that alleged barriers on the Website denied him equal access to Lands' End's "store locations, information pertaining to good availability, information about store amenities, including hours of operation, and related goods and services."  Compl. ¶ 36.  In reality, however, Garey's Complaint is only about the functionality of the website as an online shopping portal. He does not allege that the Website's alleged inaccessibility has prevented him from accessing any goods or services at physical Lands' End stores.  *See Twombly*, 550 U.S. at 555 (requiring plaintiffs to plead more than "labels and conclusions").

11

For this additional reason, he has failed to state a claim.

### 2. Garey Has Not Alleged That Lands' End Engaged In Any Conduct Made Unlawful By Title III.

It is not enough for a plaintiff with a disability to allege that he sought access to a place of public accommodation; one must also claim that he was denied "full and equal enjoyment" of the goods and services offered there on the basis of his disability. In other words, a plaintiff must allege that he was the victim of some type of recognizable disability discrimination. Garey has not done so.

### i. Because The DOJ's Implementing Regulations Include No Provisions Governing Website Accessibility, Holding Lands' End Liable For Maintaining An Allegedly Inaccessible Website Would Violate Basic Principles Of Due Process.

Title III contains *no* specific provisions governing the accessibility of websites or mobile content. The DOJ admitted as much in July of 2010, when it issued an Advanced Notice of Proposed Rulemaking ("ANPR"), in which it explained that it was "*considering* revising the regulations implementing title III of the ADA *in order to establish requirements* for making the goods, services, facilities, privileges, accommodations, or advantages offered by public accommodations via the Internet, specifically at sites on the World Wide Web ('Web') accessible to individuals with disabilities." 75 Fed. Reg. 43460 (emphasis added).

The ANPR did *not* set forth any proposed regulations or guidelines but simply indicated its potential desire to promulgate rules (in the future), that would eradicate "remaining uncertainty regarding the applicability of the ADA to Web sites of entities covered by title III" and "make clear to entities covered by the ADA their obligations to make their Web sites accessible." 75 Fed. Reg. 43464.  In this ANPR, the DOJ requested "public comments regarding what standards, if any, it should adopt for web site accessibility." *Department of Justice Statement of Regulatory*

*Priorities* (Fall 2015), https://www.reginfo.gov/public/jsp/eAgenda/StaticContent/201510/ Statement_1100.html (emphasis added); *see also* 75 Fed. Reg. 43464.[2]

The DOJ's failure to issue any regulations addressing website accessibility is fatal to Garey's claim, as courts cannot fault a defendant if there are no definitive standards to follow:

> Where Congress has created specifically enumerated rights and expressed the intent of setting forth "clear, strong, consistent, enforceable standards," *courts must follow the law as written and wait for Congress to adopt or revise legislatively-defined standards that apply to those rights*. Here, to fall within the scope of the ADA as presently drafted, a public accommodation must be a physical, concrete structure. To expand the ADA to cover "virtual" spaces *would be to create new rights without well-defined standards*.

*Access Now*, 227 F. Supp. 2d at 1318 (emphasis added). As the *Access Now* Court made clear, requiring businesses to comply with nonexistent accessibility standards would violate fundamental principles of fairness and due process. Thus, it would be fundamentally unfair to hold Lands' End accountable for complying with non-existent guidelines regarding website accessibility.

To the extent Garey argues that 28 C.F.R. § 36.303 – which mandates places of public accommodation "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities" – somehow imposes requirements on commercial websites, this argument demonstrates a fundamental misunderstanding of Title III's auxiliary aids provision and conflates structural access barriers with communication barriers. 28 C.F.R. § 36.303(c)(1); *see also* 42 U.S.C. § 12182(b)(2)(A)(iii). Title III only requires places of public accommodation to *furnish* auxiliary aids for use at their physical locations; in contrast, Garey appears to argue that businesses have an obligation to help visually impaired individuals make better use of their *own* auxiliary aids (such as their screen readers) at home. Moreover, the requirement that places of public accommodation provide auxiliary aids is a "flexible one." 28

---

[2]  Despite issuing the ANPR and collecting comments from the public nearly eight years ago, the DOJ has yet to take the next step in enacting an official regulation addressing website accessibility – issuing a Notice of Proposed Rulemaking ("NPRM"). Last fall, the Trump Administration put the ANPR on its list of "inactive" regulations. *See* 2017 Inactive Regulations, RegInfo.Gov, https://www.reginfo.gov/public/jsp/eAgenda/InactiveRINs_2017_Agenda_Update.pdf (last visited May 1, 2019).

C.F.R. § 36, Appendix C ("A public accommodation can choose among various alternatives as long as the result is effective communication. For example, a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu."). So long as a business has made the information available on its website readily accessible via some other means, it has met the requirements of 28 C.F.R. § 36.303(c). *See also* 28 C.F.R. § 36, Appendix A (explaining that websites can meet any supposed accessibility obligations "by providing an accessible alternative for individuals to enjoy its goods and services, such as a staffed telephone information line"). In this case, all of the information available on Lands' End's Website is available via alternative means – by calling the numbers listed on Lands' End's website or visiting one of the Company's physical locations. As a result, 28 C.F.R. § 36.303 is inapplicable to Garey's claims. Notably, Garey does not allege that he sought to access the information he claims he attempted to find on the Website via one of these alternative means, but, had he tried to do so, he would have found such information readily available.

### ii.    Non-Binding Guidance Mentioned By The DOJ Does Not Create An Actionable Cause Of Action Under Title III.[3]

In an appendix published along with the DOJ's 2010 revisions to its implementing regulations, the agency noted that it had not "issue[d] specific regulatory language on Website accessibility." 28 C.F.R. § 36, Appendix A. In this same appendix, however, the DOJ informed readers that "[a]dditional guidance is available in the Web Content Accessibility Guidelines (WCAG) . . . which are developed and maintained by the Web Accessibility Initiative." *Id.* Simply put, these private-sector guidelines are not mandatory. For one, WCAG was developed by a private "international community where Member organizations, a full-time staff, and the

---

[3] Garey misleadingly claims that the federal government "promulgated website accessibility standards under Section 508 of the Rehabilitation Act." *See* Compl. ¶ 32. In stating this, Garey assiduously avoids mentioning that Section 508 applies to *federal agencies* and *not private corporations*. *See* 29 U.S.C. § 794(d).

public work together to develop Web standards." *About W3C*, w3.org, https://www.w3.org/Consortium/ (last visited April 25, 2019).  The initial version of WCAG was self-dubbed a "reference document for accessibility principles," and WCAG 2.0 makes clear that its guidelines are merely "recommendations." *Web Content Accessibility Guidelines 1.0*, w3.org, https://www.w3.org/TR/WAI-WEBCONTENT/ (last visited April 25, 2019); *Web Content Accessibility Guidelines 2.0*, W3.ORG, https://www.w3.org/TR/WCAG20/ (last visited February 20, 2019).  With these disclaimers in mind, it is clear that the WAI's guidelines are merely meant to assist people in their understanding of web accessibility and do not create binding requirements.  While Congress empowered the DOJ to implement regulations having the force of law, it did not empower private interest groups and volunteers to do the same.

Just as WCAG 2.0 does not place binding obligations on places of public accommodation, the DOJ's reference to these guidelines does not transmute such non-binding guidance into mandatory rules under Title III.   Moreover, under basic principles of administrative law, such passing "references" are not entitled to deference under *Chevron*, *Auer*, or even *Skidmore*. Accordingly, places of public accommodation covered by Title III are not bound to follow – and cannot be held liable for alleged violations of – WCAG. Moreover, as the DOJ recently made clear in September of 2018, "noncompliance with a voluntary technical standard for website accessibility does not necessarily indicate noncompliance with the ADA." Stephen E. Boyd, Assistant Attorney General, *Correspondence to Congressman Ted Budd* (September 25, 2018), https://www.adatitleiii.com/wp-content/uploads/sites/121/2018/10/DOJ-letter-to-congress.pdf (last accessed May 1, 2019). As a result, the existence of such non-binding "guidelines" (and Lands' End's alleged failure to comply with the same) does not save Garey's Complaint from dismissal.

### 3.    Garey Has Failed To State a Claim Upon Which Relief Can Be Granted Under The NYSHRL, The NYCRL, And The NYCHRL.

In addition to his Title III claim, Garey also brings claims under the NYSHRL,[4] the NYCRL,[5] and the NYCHRL.[6]  All three of these claims should also be dismissed under Rule 12(b)(6) for failure to state a claim.

New York state disability discrimination claims are governed by the same legal standards as federal ADA claims.  *Rodal v. Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 117 n.1 (2d Cir. 2004); *see also Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 26 (2d Cir. 2014); *Romanello v. Shiseido Cosmetics Am.,* No. 00 Civ. 7201, 2002 WL 31190169, at *7 (S.D.N.Y. Sept. 30, 2002).   As a result, claims made regarding the accessibility of places of public accommodation under the NYSHRL and the NYCRL are interpreted using the same standards as those made under Title III.  *Bebry v. ALJAC LLC*, 954 F. Supp. 2d 173, 176 (E.D.N.Y. 2013); *Panzica v. Mas-Maz, Inc.*, No. CV 05-2595 ARL, 2007 WL 1732123, at n. 1 (E.D.N.Y. June 11, 2007) ("Claims for disability discrimination arising under the New York State Human Rights Law or New York Civil Rights Law § 40-c are governed by the same legal standards as federal ADA claims."); *Samper v. Univ. of Rochester,* 144 A.D.2d 940, 535 N.Y.S.2d 281 (4th Dep't 1988).  Therefore, because Garey has failed to state a claim for relief under Title III, he has also failed to state a claim under the NYSHRL and the NYCRL.

When considering claims brought under the NYCHRL, courts must engage in an

---

[4] NYSHRL, N.Y. Exec Law § 296(2)(a), provides that: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability ... of any person ... directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof...."

[5] NYCRL, N.Y. Civ. Rights § 40–c provides that "[n]o person shall, because of ... disability ... be subjected to any discrimination in his or her civil right ... by any other person or by any firm, corporation or institution."

[6] NYCHRL, Admin. Code of City of N.Y. § 8–107(4)(a), provides that: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of the actual or perceived ... disability ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, or, directly or indirectly."

independent legal analysis separate and distinct from that completed in regards to other claims. *Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 642 (S.D.N.Y. 2013). However, a number of district courts, in conducting such independent analyses, have determined that the same standards apply to claims brought under the ADA and the NYCHRL. *See Brooklyn Ctr. for Indep. of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 643 (S.D.N.Y. 2013); *Kreisler v. Second Ave. Diner Corp.,* No. 10 Civ. 7592(RJS), 2012 WL 3961304, at *14 (S.D.N.Y. Sept. 11, 2012) (applying same standard under ADA and NYCHRL where parties had provided no reason to believe standards under two laws were different for purposes of case at issue). This is especially likely when plaintiffs plead identical claims under the NYSHRL and another similar anti-discrimination statute. *See Broderick v. Research Found. of State Univ. of N.Y.*, No. 10-CV-3612 JS ETB, 2010 WL 3173832, at *2 (E.D.N.Y. Aug. 11, 2010) (analyzing identical claims brought under ADA, NYSHRL, and NYCHRL and explaining "[r]egardless of the statute sued under, the same standards apply"). In this case, Garey's allegations under the NYCHRL are identical to those brought under Title III and New York state law. As a result, because he has failed to state a claim for relief under any of those statutes, he has also failed to state a claim under the NYCHRL.

## II. GAREY'S COMPLAINT SHOULD BE DISMISSED BECAUSE GAREY DOES NOT HAVE STANDING TO BRING A CLAIM AGAINST LANDS' END.

### A. Garey Does Not Have Standing To Bring A Claim Against Lands' End.

Because issues of justiciability are components of a federal court's subject matter jurisdiction, and because the issue of whether a plaintiff has standing to bring a particular claim is an issue of justiciability, motions that raise lack of standing are properly brought pursuant to Rule 12(b)(1). To establish standing to bring a claim for injunctive relief, a plaintiff must allege three things: (1) that he has suffered an injury-in-fact; (2) the existence of a causal connection between the asserted injury-in-fact and the challenged action of the defendant; and (3) that such injury will

be redressed by a favorable decision. *Schroedel v. New York Univ. Med. Ctr.*, 885 F. Supp. 594, 598 (S.D.N.Y. 1995). Moreover, to establish that he has suffered an injury-in-fact, Plaintiff must demonstrate that there is a real and immediate threat of *future* injury. *Id.*

Garey has failed to allege that he suffered an injury-in-fact *or* that he is likely to suffer any injury in the immediate future. As explained in full above, the vast majority of courts considering the issue of website accessibility have held that a business' website can only run afoul of Title III when such website impedes a plaintiff's access to a physical location. Thus, a plaintiff has only suffered an injury-in-fact in a website accessibility case if he has attempted but been unable to access a physical establishment (or the goods and services available at the same); similarly, a plaintiff can only show a threat of future injury by demonstrating that he plans to seek access to the same physical establishment in the future. Garey does not claim that he was ever denied access to any of Lands' End' physical locations, nor does he allege that he has definite plans to seek access to one in the future. As a result, Garey has not alleged that he suffered any harm in fact (even under the most liberal interpretation of Title III).

In sum: "[N]ot only is the likelihood of future injury to [Garey] speculative, but there is no allegation that he has suffered an injury in fact. Thus, [Garey] does not have standing to obtain injunctive relief." *See Ault*, 2008 WL 490581, at *2. Moreover, because Garey has already admitted by omission the fact that the Website did not hinder his ability to visit any of Lands' End's stores (or hindered his access to the good and services available at any such stores), he will be unable to amend his Complaint to properly allege standing to bring *any* Title III claim against Lands' End based on the alleged inaccessibility of the Company's Website. Because Garey does not having standing to bring such claims, his Complaint should be dismissed with prejudice.

**B.     Garey's Claim Is Not Yet Ripe.**

"Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts."

*United States v. Fell*, 360 F.3d 135, 139 (2d Cir. 2004) (quoting *Nutritional Health Alliance v. Shalala,* 144 F.3d 220, 225 (2d Cir.1998)).  Issues of ripeness, therefore, are also properly raised on a motion to dismiss under Rule 12(b)(1).  In order for a case to be "ripe" for litigation, the plaintiff must demonstrate that he has experienced a real injury (or imminent threat of a real injury).  *See generally Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. New York State Dep't of Envtl. Conservation*, 79 F.3d 1298, 1305 (2d Cir. 1996) ("A dispute is ripe for adjudication when there is a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." (internal quotations and citation omitted)).  Generally, a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998).  The purpose of the ripeness doctrine is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 357 (S.D.N.Y. 2014) (internal quotations and citation omitted); *Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 511 (2d Cir. 2014).  As explained above, Garey has yet to suffer any real injury in this case, and he has never attempted to visit any Lands' End location in person, nor does he face an imminent threat of real injury.  As a result, Garey's claims regarding his inability to access a Lands' End physical location are simply not ripe for litigation.

### III.   GAREY'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO THE PRIMARY JURISDICTION DOCTRINE.

Dismissal of Garey's Complaint is also warranted under the primary jurisdiction doctrine, a legal principle aimed at making "courts and the regulating bodies collaborating instrumentalities of justice, the appropriate independence of each being respected by the other, so that the standards applied by them in the same general field can be concordant." *Chambers v. Beatty*, 281 F. Supp. 711, 712 (S.D.N.Y. 1968) (citations and internal quotations omitted)  This doctrine

applies to "claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S. Ct. 1213, 1220, 122 L. Ed. 2d 604 (1993); *see also United States v. Western Pac. R. Co.*, 352 U.S. 59, 63–64 (1956). The primary jurisdiction doctrine "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pac. R. Co.*, 352 U.S. 59, 64 (1956).

Courts have identified at least three factors that are relevant to whether the primary jurisdiction doctrine applies: (1) whether Congress has assigned the task involved to an administrative agency; (2) whether that agency's technical expertise or policy considerations are required to resolve the issues presented; and (3) whether the agency determination in the first instance would materially aid the court. *See Rymes Heating Oils, Inc. v. Springfield Term. R.*, 358 F.3d 82 (1st Cir. 2004). All three factors weigh in favor of applying the doctrine here. Accordingly, Garey's Complaint should be dismissed to allow the appropriate administrative process to run its course.

## CONCLUSION

For the foregoing reasons, Lands' End respectfully requests this Court to dismiss Garey's Complaint in full and with prejudice.

Dated:          May 1, 2019                         **BAKER & HOSTETLER LLP**
                New York, New York

                                                    /s/ Saima Z. Sheikh

                                                    Saima Z. Sheikh
                                                    ssheikh@bakerlaw.com
                                                    45 Rockefeller Plaza
                                                    New York, New York 10111
                                                    Tel: 212 589-4200
                                                    Fax: 212 589-4201

                                                    *Attorneys for Defendant Lands' End, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I, Saima Sheikh, hereby certify that on May 1, 2019, a true and correct copy of the foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Class Action Complaint was served on all counsel of record via the Court's ECF system.

/s/ Saima Z. Sheikh_____
    Saima Z. Sheikh
